UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BRIAN TERWILLEGER,

              Plaintiff,

    v.

STATE OF WASHINGTON, et al.,

              Defendants.

CASE NO. 3:17-CV-05360-RJB-DWC

REPORT AND RECOMMENDATION

Noting Date: November 16, 2018

The District Court has referred this action, filed pursuant to 42 U.S.C. § 1983, to United States Magistrate Judge David W. Christel. Plaintiff Brian Terwilleger, proceeding *pro se* and *in forma pauperis*, initiated this civil rights action on May 15, 2017. Dkt. 1.

Plaintiff argues his First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights were violated when Defendants failed to provide him access to the courts, confiscated some of his legal documents, and failed to adequately respond to his grievances. However, the undisputed evidence shows Plaintiff had access to an attorney for his underlying criminal trial and Plaintiff has failed to show he was frustrated in his attempt to file a nonfrivolous or arguable civil claim. Moreover, Plaintiff has not shown the confiscation of his legal documents implicates the Fourth

1  Amendment, that it otherwise constitutes a violation of his right to counsel, or that any

2  Defendant failed to adequately respond to his grievance. Therefore, the Court recommends

3  Defendants' Motion for Summary Judgment ("Motion") (Dkt. 76) be granted and Plaintiff's

4  action be dismissed with prejudice.[1]

5  **I.  Background**

6  Plaintiff argues Defendants violated his First, Fourth, Fifth, Sixth, Eighth, and Fourteenth

7  Amendment rights. *See* Dkt. 26. He argues Defendants failed to provide him adequate access to

8  legal resources to litigate his underlying criminal trial -- despite having assigned counsel --

9  unlawfully seized legal documentation regarding federal civil lawsuit, and failed to adequately

10 respond to his grievances. *Id*. Because Plaintiff has named Grays Harbor County as a Defendant,

11 the Court interprets' Plaintiff's Complaint to argue Grays Harbor County also instituted a policy

12 that failed to provide Plaintiff with adequate access to the courts. *Id*.

13 Defendants have now filed their Motion, arguing Plaintiff received adequate access to

14 legal resources because he was represented for his underlying criminal trial, the Fourth

15 Amendment was not violated when Defendants confiscated Plaintiff's legal documents regarding

16 his civil lawsuit, and Defendants adequately responded to Plaintiff's grievances and grievance

17 appeals. Dkt. 76. Defendants also argue the policy implemented by Grays Harbor County was

18 not the moving force behind any alleged constitutional violation. *Id*.

19

20

---

21 [1] The Court notes Plaintiff's argument regarding his access to the courts during his criminal trial could
constitute a challenge to his underlying conviction. Further, Plaintiff's action was previously dismissed without

22 prejudice *sua sponte* by the Honorable Robert Bryan because it was a "mixed petition," containing both civil
allegations under § 1983 and a challenge to his conviction under 28 U.S.C. § 2254. *See* Dkt. 10. However, Plaintiff
does not directly challenge his underlying conviction in his Amended Complaint, and Defendants have not raised the

23 fact Plaintiff may be challenging his conviction in their Motion, or elsewhere in their defense. *See* Dkts. 26, 76.
Because Plaintiff has not directly challenged his conviction or requested release, and Defendants have not raised the

24 issue, the Court will address the Motion on its merits.

1  Plaintiff opposes Defendants' Motion, raising new arguments that Defendants interfered

2  not only with Plaintiff's underlying criminal trial, but also with a civil case Plaintiff attempted to

3  file while he was a pretrial detainee. *See* Dkt. 83. Defendants argue Plaintiff's new arguments

4  were not raised in the original Complaint and so need not be addressed by the Court, but

5  nonetheless address them on their merits. Dkt. 88.

6  **II.    Standard of Review**

7  Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "the court shall grant

8  summary judgment if the movant shows that there is no genuine dispute as to any material fact

9  and the movant is entitled to judgment as a matter of law." A party asserting a fact cannot be or

10  is genuinely disputed must support the assertion by:

11  (A) citing to particular parts of materials in the record, including depositions,
documents, electronically stored information, affidavits or declarations,

12  stipulations (including those made for purposes of the motion only), admissions,
interrogatory answers, or other materials; or

13  (B) showing that the materials cited do not establish the absence or presence of a
genuine dispute, or that an adverse party cannot produce admissible evidence to

14  support the fact.

15  Fed. R. Civ. P. 56(c)(1). All facts and reasonable inferences drawn therefrom must be viewed in

16  the light most favorable to the nonmoving party. *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th

17  Cir. 2013) (*citing Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011); *Tarin v.*

18  *County of Los Angeles*, 123 F.3d 1259, 1263 (9th Cir.1997).

19  As the party moving for summary judgment, Defendants have the initial burden to

20  demonstrate no genuine issue of material fact remains in this case. *Celotex Corp. v. Catrett*, 477

21  U.S. 317, 325 (1986); *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir.

22  2010). The movant "always bears the initial responsibility of informing the district court of the

23  basis for its motion," and identifying those portions of the record, including pleadings, discovery

24  materials, and affidavits, "which it believes demonstrate the absence of a genuine issue of

REPORT AND RECOMMENDATION - 3

1  material fact." *Celotex*, 477 U.S. at 323. Mere disagreement or the bald assertion stating a

2  genuine issue of material fact exists does not preclude summary judgment. *California*

3  *Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th

4  Cir. 1987). A "material" fact is one which is "relevant to an element of a claim or defense and

5  whose existence might affect the outcome of the suit," and the materiality of which is

6  "determined by the substantive law governing the claim." *T.W. Electrical Serv., Inc. v. Pacific*

7  *Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

8      Mere "[d]isputes over irrelevant or unnecessary facts," therefore, "will not preclude a

9  grant of summary judgment." *Id.* Rather, the nonmoving party "must produce at least some

10  'significant probative evidence tending to support the complaint.'" *Id.* (*quoting Anderson*, 477

11  U.S. at 290); *see also California Architectural Building Products, Inc.*, 818 F.2d at 1468 ("No

12  longer can it be argued that any disagreement about a material issue of fact precludes the use of

13  summary judgment."). In other words, the purpose of summary judgment "is not to replace

14  conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."

15  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). "If a party fails to properly

16  support an assertion of fact or fails to properly address another party's assertion of fact as

17  required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting

18  materials--including the facts considered undisputed--show that the movant is entitled to it[.]"

19  Fed R. Civ. P. 56(e)(3).

20  **III.    Discussion**

21      A.  Fifth Amendment Access to Courts

22      Plaintiff argues he was denied adequate access to the Courts under the Fifth Amendment

23  because Defendants allegedly failed to provide Plaintiff adequate legal resources. Prisoners have

24  a constitutional right under the Fifth Amendment to access to the courts. *Bounds v. Smith*, 430

1   U.S. 817, 821 (1977); *Lewis v. Casey*, 518 U.S. 343, 346 (1996). This right of access to courts

2   helps ensure that the unlawfully detained obtain their freedom, and that those lawfully detained

3   have recourse for violations of their constitutional rights. *Johnson v. Avery,* 393 U.S. 483, 485

4   (1969); *Wolff v. McDonnell,* 418 U.S. 539, 579 (1974).

5       The Supreme Court has identified two types of access to courts claims: forward-looking

6   and backward-looking. *Christopher v. Harbury*, 536 U.S. 403, 412-13 (2002). In forward-

7   looking cases, the plaintiff seeks to remove present roadblocks to presentation of a grievance to a

8   court. *Id*. at 412-13. In backward-looking cases, the plaintiff seeks redress for as past inability to

9   litigate a case caused by official action, and thus "the loss or inadequate settlement of a

10  meritorious case." *Id*. at 413. In either instance, to prevail on a right to access claim, a plaintiff

11  must provide sufficient information establishing a "nonfrivolous" or "arguable" underlying

12  claim.  *Id*. at 415. Here, Plaintiff argues a backward-looking access to rights claim.

13      "[M]eaningful access to the courts is the touchstone," *id.* at 823, and "the inmate must go

14  one step further and demonstrate that the alleged shortcomings in the library or legal assistance

15  program hindered his efforts to pursue a legal claim," *Lewis*, 518 U.S. at 351. Further, "[a]n

16  inmate cannot establish relevant actual injury simply by establishing that his prison's law library

17  or legal assistance program is subpar in some theoretical sense." *Lewis,* 518 U.S. at 351.

18      However, the scope of the right to access to the courts is limited and prisoners only need

19  to have the "minimal help necessary" to file legal claims. *Id*. at 360.  The right of access to the

20  courts does not extend to a right to discover claims or litigate them once filed with a court. *Id*. at

21  354-55. Further, the Constitution does not mandate "that prisoners (literate or illiterate) be able

22  to conduct generalized research, but only that they be able to *present* their grievances to the

23  courts." *Id.* at 360 (emphasis added*); see also Madrid v. Gomez,* 190 F.3d 990, 995 (9th Cir.

24

1    1999); *Cornett v. Donovan,* 51 F.3d 894, 898 (1995), *cert. denied sub nom Henry v. Caballero,*

2    518 U.S. 1033 (1996); *Exmundo v. Kevorkian,* 2009 WL 3416236, *3 (E.D. Cal. Oct.22, 2009)

3    (holding that litigating a case effectively is not a constitutionally protected right, and finding the

4    plaintiff did not state an access claim when he alleged he had to secure extensions and speculated

5    the outcome of a case may have been different had he been able to litigate more effectively);

6    *Ruth v. Glebe,* 2015 WL 5156339, at *4 (W.D. Wash. May 19, 2015) *report and*

7    *recommendation adopted*, 2015 WL 5156362 (W.D. Wash. Sept. 2, 2015).

8        Importantly, the Ninth Circuit has held the offer of appointed counsel, even if a prisoner

9    does not avail himself of that counsel, is sufficient to prove a prisoner was provided adequate

10    access to the courts pursuant to the Fifth Amendment. *United States v. Wilson*, 690 F.2d 1267,

11    1272 (9th Cir. 1982) (no Fifth Amendment violation when prisoner was denied access to law

12    library to research underlying criminal charge, but had access to counsel appointed to represent

13    him in the underlying criminal proceeding). The Fifth Circuit has gone farther, stating a prisoner

14    has adequate access to the courts if he is represented by counsel for a criminal trial and desires to

15    file an unrelated civil rights action – that circuit found the prisoner has the burden to ask his

16    appointed counsel about the unrelated civil rights action, and implied the attorney must deny the

17    prisoner assistance before the prisoner can prove he was otherwise denied access to the courts.

18    *See Mann v. Smith*, 96 F.2d 79, 83-84 (5th Cir. 1986). The Ninth Circuit has not explicitly held a

19    prisoner has the burden to ask their criminal attorney about unrelated civil matters before

20    demonstrating he or she was denied adequate access to the courts.

21        Finally, Plaintiffs must show that they suffered an actual injury due to the defendant's

22    unconstitutional conduct.  *Lewis*, 518 U.S. at 349; *Pena*, 976 F.2d at 471 (vague and conclusory

23    allegations of official participation in civil rights violations are not sufficient to withstand a

24

1  motion to dismiss).  Actual injury requires "actual prejudice with respect to contemplated or

2  existing litigation." *Nevada Dep't of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011).

3      *1.  Access to Courts Regarding Criminal Case*

4      The undisputed evidence shows Plaintiff has not suffered an actual injury and is not

5  seeking to challenge his conviction regarding access to the courts for his underlying criminal

6  proceeding. Initially, it is undisputed Plaintiff was represented by counsel in his underlying

7  criminal case. The undisputed facts show the trial court appointed Non-Party Ronnie Soriano as

8  Plaintiff's counsel for his criminal charges on September 10, 2016. Dkt. 77-3. Non-Party Soriano

9  entered his notice of appearance on September 15, 2016. Dkt. 77-16. Though Plaintiff stated in

10  his deposition he was represented often times "against [his] wishes," he does not dispute he was

11  represented by a criminal defense attorney throughout his criminal proceedings. Dkt. 77-4,

12  Terwilleger Deposition Excerpts, pp. 3-4. Thus, because Plaintiff was represented by counsel in

13  his underlying criminal case, Plaintiff cannot show he received inadequate access to the courts.

14  *Wilson*, 690 F.2d at 1272.

15      In addition, Plaintiff bypassed his counsel and filed dozens of letters and motions directly

16  with the trial court throughout his criminal proceeding. *See* Dkts. 77-5 – 77-14. For example, on

17  February 28, 2017 alone, Plaintiff mailed the following documents to the state superior court

18  judge presiding over his case: Motion to Allow Third Party (Dkt. 77-11, p. 9); Motion to

19  Expedite (*Id*. at p. 10); Motion to Dismiss All Charges (*Id*. at p. 11); Motion to Remove No

20  Contact Order (*Id*. at p. 12); Motion to Release Evidence (*Id*. at p. 13); Motion for Writ of

21  Habeas Corpus (*Id*. at p. 14); Motion for Release (*Id*. at p. 15); Motion to Allow Medical Furlow

22  (*Id*. at p. 16); Motion to Reduce Bail (*Id*. at p. 17); and Motion to Suppress (*Id*. at p. 18). Thus,

23  the undisputed evidence shows Plaintiff was able to file multiple letters and motions in his

24

1   attempt to litigate his underlying criminal charge. *See Alvarez v. Hill*, 518 F.3d 1152, 1154-55

2   n.1 (9th Cir. 2008) ("We affirm the district court's grant of summary judgment as to this claim

3   because [Plaintiff] has not 'allege[d] injury, such as inability to file a complaint or defend against

4   a charge' resulting from deficiencies in access. *Jones v. Blanas,* 393 F.3d 918, 936 (9th

5   Cir.2004). Failure to show that a 'nonfrivolous legal claim had been frustrated' is fatal to [a

6   prisoner's] *Bounds* claim. [*Lewis*, 518 U.S. at 353 & n. 4 (1996)]."). Therefore, Plaintiff has

7   failed to demonstrate Defendants denied him adequate access to the courts regarding his

8   underlying criminal trial.

9            *2.  Access to Courts Regarding Civil Actions*

10          Plaintiff alleges for the first time in his Response that he was deprived of access to the

11  courts not only regarding his criminal trial, but also regarding civil complaints he desired to file.

12  As an initial matter, this allegation is contained only in Plaintiff's Response – in general, the

13  Court will not consider a new claim raised for the first time in a Response to a Motion for

14  Summary Judgment. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292-93 (9th Cir. 2000).

15          Further, Plaintiff has provided no evidence he ever attempted to file a civil suit in state or

16  federal court while he was detained. Plaintiff's Complaint only references his criminal trial, and

17  his Response is not signed under penalty of perjury, so the Court may not consider it as evidence

18  in support of his Complaint. *See Johnson v. Sandy*, 2015 WL 1894400, at *1 (E.C. Cal. April 24,

19  2015) (noting declarations not signed under penalty of perjury should not be examined in

20  determining summary judgment) (citing 28 U.S.C. § 1746). Thus, because Plaintiff has failed to

21  show he attempted to file a civil action at all while in jail, Plaintiff has not shown his access to

22  the courts was improperly inhibited. *See Lavine v. Clarke*, 2009 WL 1794484, at *4 (W.D.

23  Wash. June 23, 2009) (a prisoner failed to show any injury when he failed "to identify any case

24

1    or cause of action he lost or was not able to file," and so had not demonstrated his access to the

2    courts was inadequate) (citing *Lewis*, 518 U.S. at 552-53); *see also Herrick v. Strong*, 2016 WL

3    4755685, at *13 (W.D. Wash. Aug. 22, 2016) (a "frustrated nonfrivolous claim 'is an element

4    that must be described in the complaint, just as much as allegations must describe the official

5    acts frustrating the litigation'") (quoting *Christopher*, 536 U.S. at 413-14).

6        In addition, to prevail on a right to access claim, a plaintiff must provide sufficient

7    information establishing a "nonfrivolous" or "arguable" underlying claim. *Christopher*, 536 U.S.

8    at 415. However, the only information Plaintiff provides showing he was denied any access to

9    the courts regarding any civil case is a document, filed with his Response to Defendants' Motion,

10   stating he had a "need [for] law books [o]n 28 usc [sic] 1983 and 42usc [sic] section 1983." Dkt.

11   84-7, p. 11. The Court finds this vague request for legal resources insufficient to show Plaintiff

12   had either a "nonfrivolous" or "arguable" underlying civil claim. *See Markussen v. Warner*, 2016

13   WL 6496723, at *5 (W.D. Wash. Aug. 19, 2016) (failure to adequately state the allegedly

14   thwarted claim in the complaint itself, and demonstrate it was arguable and nonfrivolous, is

15   grounds to dismiss an access to courts claim).[2]

16       Defendants argue, in any case, Plaintiff had adequate access to the Courts because he was

17   represented by his criminal defense attorney and Plaintiff could have asked that attorney

18   questions regarding any civil matter he desired to file. Dkt. 76, p. 15; Dkt. 8, pp. 2-3. Plaintiff

19

20   _____

21       [2] Defendants argue, in part, Plaintiff was not denied access to the courts because he was able to file this
     case after he was transferred from Grays Harbor County Jail to prison, and Judge Bryan dismissed it *sua sponte*.
22   Dkt. 88, p. 7. Defendants also argue, in part, Plaintiff was not denied access to the courts because he was able to file
     a different civil case, and that civil case was also dismissed by Judge Bryan. *See* Dkt. 88, p. 7 (citing Dkt. 89-1, pp.
     8-9. However, the Court notes that case was filed on August 2, 2017, when Plaintiff was not in custody, and so has
23   no bearing on whether he was actually impeded from filing his claim by jail staff. *See Terwilliger v. Soriano*, Case
     No. 3:17-cv-05624-RJB, Dkt. 1. Further, Judge Bryan dismissed the case for lack of jurisdiction, in part, because
     Plaintiff was seeking habeas relief and was not in custody. Dkt. 89-1. Therefore, that decision also has no bearing on
24   the potential merits of Plaintiff's claims had he filed it when he was still in custody.

1  argues he was denied access to the courts because, though he was represented by counsel,

2  Defendants did not provide him access to a law library or other legal materials. However, it is

3  undisputed Plaintiff was represented by counsel.

4      As noted above, the Fifth Circuit has held access to appointed counsel for an underlying

5  criminal case provides a prisoner adequate access to the courts, so long as the appointed counsel

6  does not refuse to assist the prisoner in his unrelated civil action. *Mann*, 96 F.2d at 83-84.

7  However, the Ninth Circuit has not affirmatively held a prisoner has adequate access to the

8  courts if he is represented by counsel in an unrelated matter. In any case, because Plaintiff has

9  failed to show he suffered any injury from the alleged constitutional deprivation, the Court need

10 not determine whether access to Plaintiff's criminal defense attorney was sufficient to

11 demonstrate adequate access to the courts.

12     Therefore, Plaintiff has failed to demonstrate he suffered an actual injury from any sort

13 of deprivation of access to the Courts. Accordingly, the Court recommend Plaintiff's claims

14 regarding any civil matters he attempted to file be dismissed.

15     B.  <u>First Amendment Interference with Right to Access the Courts</u>

16     The First Amendment guarantees the right to "petition the Government for a redress of

17 grievances." U.S. Const. amend. I. "It is well settled that the right to access to the courts is

18 subsumed within the right to petition." *Laws v. City of Seattle*, 2009 WL 3836122, at *3 (W.D.

19 Wash. Nov. 12, 2009) (citing *Bill Johnson's Rests., Inc. v. Nat'l Labor Relations Bd.,* 461 U.S.

20 731, 741 (1983)). A prisoner's right to litigate without active interference under the First

21 Amendment applies to all "claims that have a reasonable basis in law or fact." *Silva v. Di*

22 *Vittorio*, 658 F.3d 1090, 1103 (9th Cir. 2011) (citations and internal quotations omitted). The

23 Supreme Court has held a prisoner must demonstrate he lost access to a past, present, or potential

24

opportunity for litigation, and the actions of prison officials actively led to the denial of access. *See Christopher v. Harbury*, 536 U.S. 403, 414-15 (2002). Though this right does not require prison officials to actively assist with a prisoner's filings, it prohibits prison officials from erecting barriers which "impede the right of access of incarcerated persons." *Id.* at 1102-03 (citations and internal quotations omitted). Again, a prisoner arguing his right to access the courts has been violated must also demonstrate an actual injury. *Lewis*, 518 U.S. at 349; *Madrid v. Gomez*, 190 F.3d 990, 996 (9th Cir. 1999). To show actual injury, Plaintiff must demonstrate he suffered "actual prejudice with respect to contemplate or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348).

Stating the same facts as those discussed in Section II(A) *supra*, Plaintiff argues he was denied access to materials necessary to litigate his underlying criminal case. However, the undisputed evidence shows Plaintiff was provided access to the courts. As noted in Section II(A)(1) *supra*, even reading the undisputed facts in the lights most favorable to Plaintiff, Plaintiff was represented in his underlying criminal prosecution and Plaintiff was able to file dozens of letters and motions in his underlying criminal trial. Thus, because Plaintiff had representation and was able to successfully make filings in that case, it cannot be said he suffered an actual injury from his alleged inability to access the courts. *See Clinton v. Luek*, 2010 WL 114208, at *8 (C.D. Cal. Jan. 8, 2010) (citing *Lewis*, 518 U.S. at 348) (finding, in part, the ability to file and litigate a federal case indicates a prisoner has not suffered an "actual injury"). In addition, as noted above in Section II(A)(2), Plaintiff has failed to provide anything other than conclusory allegations that he was prohibited from filing any sort of civil claims. Therefore, Plaintiff has failed to show Defendants' actions actually prejudiced Plaintiff or otherwise blocked him from accessing the Courts, and he has thus failed to show he suffered an actual

1   injury as a result. Accordingly, the Court recommends Plaintiff's First Amendment interference

2   claim be dismissed.

3          C.   Fourth Amendment Seizure of Legal Documents and Invasion of Privacy

4          The Fourth Amendment prohibits unreasonable searches and seizures. *Bell v. Wolfish,*

5   441 U.S. 520, 558 (1979); *Byrd v. Maricopa Cnty. Sheriff's Dep't,* 629 F.3d 1135, 1140 (9th Cir.

6   2011), *cert. denied,* 131 S.Ct. 2964 (2011); *Michenfelder v. Sumner,* 860 F.2d 328, 332 (9th Cir.

7   1988). However, the Fourth Amendment rights of convicted prisoners are "extremely limited."

8   *United States v. Vallez*, 653 F.2d 403, 406 (9th Cir. 1981) (citing *Lanza v. New York*, 370 U.S.

9   932 (1974)). Thus, the Ninth Circuit has determined "the Fourth Amendment *does not* protect a[]

10  [prisoner] from the seizure and destruction of his property." *Taylor v. Knapp*, 871 F. 2d 803, 806

11  (9th Cir. 1989). "This does not mean a prisoner is without redress; it simply means a prisoner's

12  form of redress is through the fifth and fourteenth amendments." *Id. See also Lemus v. Kings*

13  *County Sherriff Office/Jail*, 2016 WL 829174, at *3 (E.D. Cal. March 3, 2016) (finding "that an

14  envelope of [legal[ documents [that] was received by jail personnel who then lost, misplaced, or

15  destroyed it" does not implicate the Fourth Amendment).

16         Here, Plaintiff's sole Fourth Amendment claim is that his protections against

17  unreasonable searches and seizures were violated when Defendant Ancich required Plaintiff to

18  surrender his legal paperwork when he was transferred from Grays Harbor County custody to

19  Washington Department of Corrections custody. Dkt. 26, p. 8. However, seizure of Plaintiff's

20  legal documents does not implicate his Fourth Amendment rights – rather, he must seek redress

21  through a Fifth or Fourteenth Amendment claim, as he has done here. *Lemus*, 2016 WL 829174,

22  at *3. Therefore, because Plaintiff's Fourth Amendment rights are not implicated in the seizure

23  of his property, he has not stated a Fourth Amendment claim for the seizure of his legal

24

1  documents. Accordingly, the Court recommends Plaintiff's Fourth Amendment Claim be

2  dismissed.

3        D.  <u>Sixth Amendment Right to Counsel Regarding Seizure of Legal Documents</u>

4       "The Sixth Amendment provides that '[i]n all criminal prosecutions, the accused shall

5  enjoy the right . . . to have the Assistance of Counsel for his defence [sic].'" *Nordstrom v. Ryan*,

6  762 F.3d 903, 909 (9th Cir. 2014) (quoting U.S. Const. amend. VI). Interference with a criminal

7  defendant and his attorney may rise to the level of a constitutional violation. *See id.* at 10 (noting

8  observation or interference in the interaction between a prisoner and counsel could constitute a

9  violation of the Sixth Amendment). However, no constitutional right to appointed counsel exists

10  in a § 1983 action. *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981); *see United States*

11  *v. $292,888.04 in U.S. Currency*, 54 F.3d 564, 569 (9th Cir. 1995) ("[a]ppointment of counsel

12  under this section is discretionary, not mandatory"). Even in a criminal context, the plaintiff must

13  show, "at a minimum, that the intrusion [into the attorney client interaction] was purposeful, that

14  there was communication of [the plaintiff's] strategy to the prosecution, *or* that the intrusion

15  resulted in tainted evidence." *U.S. v. Fernandez*, 388 F.3d 1199, 1240 (9th Cir.2004) (citing

16  *United States v. Danielson,* 325 F.3d 1054, 1067 (9th Cir.2003)) (emphasis in original).

17       Plaintiff's sole Sixth Amendment allegation is that Defendant Ancich violated his right to

18  access to counsel when she required Plaintiff to surrender his legal paperwork when he was

19  being transported from custody between Grays Harbor County and the Washington Department

20  of Corrections. Dkt. 26, p. 8. It is undisputed the alleged deprivation of Plaintiff's legal materials

21  occurred on September 8, 2017. Dkt. 26, p. 8; Dkt. 78, p. 12. However, Plaintiff's conviction and

22  sentence became final on September 8, 2018, before his transfer, *see* Dkt. 77-1, and Plaintiff has

23  stated himself that the documents that were confiscated pertained to a civil case, rather than

24

1  Plaintiff's criminal trial, *see* Dkt. 77-4, pp. 20-22. As noted above, Plaintiff did not have a right

2  to counsel, and indeed did not have counsel, for his civil case at that time. Thus, because Plaintiff

3  was no longer represented by counsel in his criminal case and because the allegedly confiscated

4  documents pertained to a civil case, and not Plaintiff's criminal case, Plaintiff's Sixth

5  Amendment right to counsel was not implicated. *See Morris v. Orleans Hotel and Casino*, 2013

6  WL 6409880, at *6 (D. Nev. Sept. 27, 2013) (noting the Sixth Amendment is strictly limited to

7  the criminal context) (citing *United States v. $292,888.04 in U.S. Currency*, 54 F.3d 564, 569

8  (9th Cir. 1995)); *Goode v. Evans Metal Fabricators*, 2013 WL 2631492, at *2 (D. Ore. June 11,

9  2013) (collecting cases and noting no Sixth Amendment rights are implicated in purely civil

10  contexts). Accordingly, the Court recommends Plaintiff's claims under the Sixth Amendment be

11  dismissed.

12      E.  Eighth Amendment Conditions of Confinement

13          Plaintiff's sole allegation under the Eighth Amendment states a claim only against

14  Defendant Lusby for allegedly violating Plaintiff's protections against cruel and unusual

15  punishment when he "failed to act on [Plaintiff's] grievance and grievance appeal." Dkt. 26, p.

16  14. Though it is unclear on what basis Plaintiff argues the failure to answer a grievance violates

17  the Eighth or Fourteenth Amendments, Plaintiff's grievance and grievance appeal indicate he

18  believes he was not receiving adequate access to medical care as well as claims of physical and

19  mental abuse. Dkts. 78-14, 78-15. Initially, a pretrial detainee is protected from conditions

20  constituting punishment under the Due Process Clause of the Fourteenth Amendment, not the

21  Eighth Amendment Cruel and Unusual Punishment Clause. *See Bell v. Wolfish*, 441 U.S. 520,

22  535 n.16 (1971). Nonetheless, the Ninth Circuit analyzes a pretrial detainee's claims using

23  largely the same analysis it would use with a prisoner's claim brought pursuant to the Eighth

24

Amendment. To establish a constitutional violation under the Eighth Amendment due to inadequate medical care, a plaintiff must show "deliberate indifference" by prison officials to a "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The indifference to medical needs must be substantial; a constitutional violation is not established by negligence or "an inadvertent failure to provide adequate medical care." *Estelle*, 429 U.S. at 105-06; *Anthony v. Dowdle*, 853 F.2d 741, 743 (9th Cir. 1988).  Prison officials violate their obligation by "intentionally denying or delaying access to medical care." *Estelle,* 429 U.S. 97, 104-05 (1976). "[C]laims for violations of the right to adequate medical care 'brought by pretrial detainees against individual defendants under the Fourteenth Amendment' must be evaluated under an objective deliberate indifference standard." *Gordon v. County of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (citing *Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016)) (slip opinion).

Here, Defendant Lusby's response indicates he investigated Plaintiff's grievance and found no evidence of physical or mental abuse, and found no previous allegations of inadequate access to medical care. *Id*. The extent of Plaintiff's allegation is that Defendant Lusby failed to adequately respond to Plaintiff's grievance and the undisputed evidence indicates Defendant Lusby investigated and adequately responded to Plaintiff's grievance. Thus, because Plaintiff has provided no other basis for an Eight or Fourteenth Amendment violation, the Court finds Plaintiff has not shown Defendant Lusby violated Plaintiff's Eighth Amendment protections when he responded to Plaintiff's grievance. Accordingly, the Court recommends Plaintiff's Eighth Amendment allegation be dismissed.

F.  Claims Against Grays Harbor County Pursuant to *Monell*

Municipalities, such as counties, are subject to suit under § 1983.  *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 (1978).  However, "[i]n order to bring an appropriate action challenging the actions, policies or customs of a local governmental unit, a plaintiff must name the county or city itself as a party to the action, and not the particular municipal department or facility where the alleged violation occurred.  *See Nolan v. Snohomish County*, 59 Wash.App. 876, 883, 802 P.2d 792, 796 (1990)."  *Bradford v. City of Seattle*, 557 F.Supp.2d 1189, 1207 (W.D. Wash. 2008) (holding that the Seattle Police Department is not a legal entity capable of being sued under § 1983).

A municipality may only be liable if its policies are the "'moving force [behind] the constitutional violation.'"  *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (quoting *v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978)).  In order to state a claim against a county or other municipal entity a plaintiff must show that defendant's employees or agents acted through an official custom, or policy that permits deliberate indifference to, or violates, plaintiff's civil rights; or that the entity ratified the unlawful conduct.  *See Monell,* 436 U.S. at 690-91; *Larez v. City of Los Angeles*, 946 F.2d 630, 646-47 (9th Cir. 1991).  To establish municipal liability under § 1983, a plaintiff must show (1) deprivation of a constitutional right; (2) that the municipality has a policy; (3) the policy amounts to deliberate indifference to plaintiff's constitutional rights; and (4) the policy is the moving force behind the constitutional violation.  *See Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992).

A municipality will not be liable for acts of negligence by employees of the jail or for an unconstitutional act by a non policy-making employee.  *Davis v. City of Ellensburg*, 869 F.2d 1230, 1234-35 (9th Cir. 1989).  Evidence of mistakes by adequately trained personnel or the occurrence of a single incident of unconstitutional action by a non-policy-making employee is

1  not sufficient to show the existence of an unconstitutional custom or policy. *Thompson v. City of*

2  *Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989).

3      Plaintiff has named Grays Harbor County as a Defendant. Based on Plaintiff's Response,

4  the court interprets Grays Harbor County's inclusion as an allegation Grays Harbor County's

5  policies or practices were the driving force behind Plaintiff's alleged deprivation of access to the

6  courts. *See* Dkt. 83. Grays Harbor County has several policies regarding prisoners' access to the

7  courts and legal materials. The undisputed evidence shows Policy 504, regarding "inmate

8  indigent services," regulates "items inmates need to maintain themselves in clean, sanitary

9  conditions as well as items that allow access to communicate with family, friends, and the legal

10  system." Dkt. 78-3, p. 2. That policy requires indigent inmates be provided with "[s]ix pieces of

11  paper," "[t]hree envelopes," a "[p]en," "[f]ree mail service (up to three envelopes per week),"

12  and "[f]ree unlimited legal mail." *Id*. Policy 505 provides guidelines for material that constitutes

13  legal mail, defining legal mail as mail to attorneys, mail to non-profit groups such as the

14  American Civil Liberties Union, and mail to government representatives, both local and federal.

15  Dkt. 78-4, p. 2. The policy authorizes the inspection of legal mail in the presence of the prisoner

16  to whom it is addressed, and authorizes inspection of legal mail to ensure it is actually legal mail

17  and to ensure it is free from contraband. *Id*. at pp. 7-8. Finally, Policy 508 provides guidance for

18  the provision of legal materials to prisoners, and states prisoners will be allowed to request legal

19  materials, such as law books, through a specific request form. Dkt. 78-5, p. 3. It also provides

20  that prisoners may view those law books in a particular location, but does not allow the prisoner

21  to bring any law books with them to their cells. *Id*.

22      Here, Plaintiff has not shown Grays Harbor County's policies constitute the driving force

23  behind an unconstitutional deprivation of access to the courts. Initially, the Court has already

24

1    found Plaintiff did not suffer an unconstitutional deprivation. However, even if he had, Grays

2    Harbor County's policies do not mandate any deprivation. As noted above, the policies require

3    indigent prisoners to receive three envelopes and six sheets of paper for personal and legal use

4    per week. They also mandate prisoners receive a pen to utilize those envelopes and paper,

5    mandate unlimited use of the mail system for legal purposes, and mandate jail staff provide

6    prisoners with legal materials in a controlled environment when requested. Further, the policies

7    require suspicious legal mail to be opened in the presence of the prisoner, and allow inspection

8    of legal mail only to determine it is, in fact, legal mail and is free of contraband. Thus, Grays

9    Harbor County's policies, far from restricting access to the courts, actively require county staff to

10   provide materials for filing legal challenges and communicating with counsel and the courts.

11   Such a policy, and the fact that Plaintiff has filed numerous letters and motions with the trial

12   court, as well as at least two civil actions with the federal courts, cannot be said to be the driving

13   force behind an unconstitutional deprivation of access to the courts. *See*, *e.g.*, *Hopper v. John*

14   *Doe Myers Recreational Coach Northwest Detention Center*, 2006 WL 3337388, at *5-*6 (W.D.

15   Wash. Nov. 9, 2006) (finding a policy providing access to legal resources and providing legal

16   materials, coupled with a prisoner's actual filing of numerous legal actions, demonstrated a

17   prison's policies did not violate a prisoner's right to access the courts). Thus, Plaintiff has not

18   shown the Grays Harbor County policies violated his ability to access the courts. Accordingly,

19   the Court recommends Plaintiff's *Monell* claims be dismissed.

20       G.  Qualified Immunity

21       Defendants also argue they are entitled to qualified immunity. Dkt. 76. However, because

22   the Court has already determined Plaintiff's action should be dismissed on the merits, the Court

23   declines to make a finding as to qualified immunity at this time.

24

1

**CONCLUSION**

2          Based on the foregoing, the Court concludes Plaintiff has failed to show there is a dispute

3 of material fact as to any of his constitutional claims. Accordingly, the Court recommends

4 Defendants' Motion (Dkt. 76) be granted, and Plaintiff's action dismissed with prejudice.

5          Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

6 fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

7 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*

8 review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

9 imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on

10 November 16, 2018, as noted in the caption.

11

12          Dated this 30th day of October, 2018.

13

14          _____

David W. Christel
15          United States Magistrate Judge

16

17

18

19

20

21

22

23

24